**Robert Charles McDONALD, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 14–02–01052–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 5, 2004.

Kurt B. Wentz, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and SEYMORE.

## MAJORITY OPINION

RICHARD H. EDELMAN, Justice.

Robert Charles McDonald appeals a conviction for indecency with a child[1] on various grounds. We affirm.

### Sufficiency of the Evidence

Appellant's first and second points of error argue that the evidence was legally and factually insufficient to prove that any touching he did was intended to arouse and gratify his sexual desire.

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex.Crim.App.2004). In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Ross*, 133 S.W.3d at 620. The requisite intent to arouse or gratify a defendant's sexual desire can be inferred from his conduct, remarks, and all the surrounding circumstances, including a common pattern of similar acts. *Ranson v. State*, 707 S.W.2d 96, 97 (Tex.Crim.App.1986).

Appellant's first point of error contends that the evidence is legally insufficient to prove intent because it failed to show that: (1) he laughed, smiled, or acted excited; (2) he admitted what he had done, that he had a problem, or that his actions made him feel good; or (3) the child or her grandmother reprimanded him. However, the child[2] testified that: (1) appellant asked her to sit in his lap three times; (2) when she did so, appellant made her move so her legs straddled his leg; (3) appellant moved his leg under her private area; (4) appellant kissed her on her left breast over her clothes; (5) when she tried to get away, appellant held her back by placing his arms around her waist; (6) appellant asked to see under her dress and tried to

---

1. *See* TEX. PEN.CODE ANN. § 21.11(a)(1) (Vernon 2003). A jury convicted appellant, and the trial court sentenced him to life imprisonment.

2. The child was nine years old at the time of the offense.

look under her dress; (7) while the child's younger female cousin was crawling on the floor, appellant pulled the cousin's pants and underwear down; (8) when the cousin sat on appellant's lap with both legs to one side, appellant moved them so her legs were straddling his leg; and (9) appellant touched the cousin on her breasts and told her to put her hand on his private area. The child's mother similarly testified that the child had told her that appellant had asked her to sit in his lap, made her straddle his legs, moved his leg under her private area, and kissed her on her breasts. In addition, the child's grandmother testified that she saw the child sitting on appellant's lap, straddling his legs, and that appellant kissed the child's left breast. Because this evidence is legally sufficient to prove that appellant acted with the intent to arouse or gratify his sexual desire, his first point of error is overruled.

Appellant's second point of error contends that the evidence was factually insufficient to prove his intent because: (1) it was dubious that someone would engage in the complained-of conduct with a child while in a small room in the presence of her grandmother; and (2) neither the child nor her grandmother reprimanded appellant, told him to leave, warned others about him, or called the police. However, in addition to providing no record references to support these assertions, this section of appellant's brief essentially challenges the credibility of the evidence

rather than its sufficiency. To whatever extent appellant's contentions are supported by the record, they do not render the evidence factually insufficient. Accordingly, appellant's second point of error is overruled.

### Notice of Intent to Use Extraneous Offense Evidence

Appellant's third point of error argues that the trial court erred in admitting the child's testimony regarding an extraneous offense because the State failed to provide adequate notice of its intent to use that evidence at trial. See TEX.R. EVID. 404(b).[3]

A trial court's ruling on the admissibility of extraneous offense evidence is reviewed for abuse of discretion. *Page v. State,* 137 S.W.3d 75, 78 (Tex.Crim.App. 2004). In order for evidence of other crimes to be admissible under rule 404(b), it must be relevant for a purpose other than to show the character of a person and that he acted in conformity with it. *See* TEX.R. EVID. 404(b).

"Same transaction contextual evidence" is evidence reflecting the context in which a criminal act occurred, recognizing that events do not occur in a vacuum, and a jury has a right to hear what occurred immediately before and after the offense in order to realistically evaluate the evidence. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App.2000). To be *admissible* under rule 404(b) (*i.e.,* rele-

---

**3.** The notice requirement under section 3 of article 38.37 of the Texas Code of Criminal Procedure pertains to evidence of extraneous offenses committed by the defendant against the child victim of the charged offense. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37 § 2 (Vernon Supp.2004). It thus does not apply to this evidence pertaining to another child. In addition, although article 38.37 does not contain an express exception to the notice requirement for evidence arising in the same

transaction, as does Rule 404(b), section 4 of article 38.37 provides that it does not limit the admissibility of extraneous offense evidence under any other applicable law. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37 § 4. Therefore, to the extent such evidence would be admissible without notice under Rule 404(b) as same transaction evidence, it logically follows that article 38.37 would not limit that admissibility.

vant for a purpose other than to show character conformity), same transaction contextual evidence must be necessary to the jury's understanding of the offense.[4] Thus, necessity is the "other purpose" for which same transaction contextual evidence is admissible under rule 404(b). *Rogers v. State,* 853 S.W.2d 29, 33 (Tex. Crim.App.1993). Importantly, therefore, necessity is not a requirement for evidence to *be* same transaction contextual evidence, but instead for same transaction contextual evidence to be *admissible* under rule 404(b) (and whether or not notice, discussed below, is even an issue). Such necessity can exist either because: (1) several offenses are so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other;[5] or (2) the same transaction contextual evidence tends to establish some evidentiary fact, such as motive or intent.[6]

In addition, upon a timely request, the State must give notice of its intent to introduce (in its case-in-chief) rule 404(b) "other purpose" extraneous offense evidence *"other than that arising in the same transaction"* (emphasis added). *See* TEX.R. EVID. 404(b). However, although necessity is required for same transaction contextual evidence to be relevant under rule 404(b) for a purpose other than character conformity, there is no indication that it is required in order for same transaction contextual evidence to simply be evidence "arising in the same transaction" and thereby exempt from the rule 404(b) notice rule.

■ In this case, the challenged extraneous offense evidence shows that, on the same day, during appellant's same visit to the grandmother's apartment, and within a short time after the charged offense, he: (1) pulled down the cousin's pants and panties to expose her bottom; and (2) asked her to touch his "private area." Because this evidence was closely related in time, location, and subject matter with the charged offense, it was within the trial court's discretion to conclude that it was evidence "arising in the same transaction" for which notice was not required under rule 404(b).[7]

In addition, rule 404(b) provides no elaboration on what constitutes "reasonable notice" of the State's intent to introduce non-character conformity extraneous offense evidence, and appellant has cited no authority specifying what reasonable notice consists of. In this case, the State provided appellant notice of seven extraneous offenses, including touching the breast of the cousin. Because appellant has provided no authority or reasoning to show how this notice failed to constitute reasonable notice of the State's intent to offer non-character conformity extraneous offense evidence, his third point of error affords no basis for relief for this reason, as well, and is accordingly overruled.

4. *Wyatt v. State,* 23 S.W.3d 18, 25–26 (Tex. Crim.App.2000).

5. *See Rogers v. State,* 853 S.W.2d at 33–34 (holding that same transaction contextual evidence regarding defendant's possession, use, and sale of marijuana was not necessary to presenting evidence of burglary and methamphetamine offenses).

6. *Wyatt,* 23 S.W.3d at 25–26 (holding that same transaction contextual evidence of sexual assault was necessary to prove that the

murder was intentional by showing that the sexual assault was the motive for the murder).

7. Moreover, if necessity were required for evidence arising in the same transaction to be exempt from the notice rule, the challenged evidence was necessary to prove the requisite mental state, as demonstrated by appellant's challenge to the legal and factual sufficiency of the evidence to prove that element of the offense in his first two issues, above.

### Improper Jury Argument

■ Appellant's fourth point of error argues that the trial court erred by denying his request for a mistrial after the following exchange:

State: How do you think it would feel to sit up there for me to cross-examine you on some topic? How do you think you'd do? *I think [the child] did fantastic. I think she was very believable.*

Defense Counsel: I'd object to what he believes. Invades the province of the jury and improper.

Court: Sustained.

Defense Counsel: Ask the jury disregard that.

Court: Disregard.

Defense Counsel: Ask for mistrial.

Court: Denied.

\* \* \* \*

State: Do you think she wanted to get on the stand? Did you see her walk up there? Who would want to do that? I'd rather have 20 root canals than have that done to me.

Defense Counsel: He's personalizing it, in fact, he wants 20 root canals. He's personalizing it.

Court: Sustained.

(emphasis added).

■ A trial court's denial of a motion for mistrial is reviewed for abuse of discretion. *Simpson v. State,* 119 S.W.3d 262, 272 (Tex.Crim.App.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004). Mistrial is appropriate for only errors so highly prejudicial and incurable that expenditure of further time and expense would be wasteful and futile. *Id.* Even when a prosecutor argues facts outside the record, an instruction to disregard will generally cure the error.

*Martinez v. State,* 17 S.W.3d 677, 691 (Tex. Crim.App.2000).

In this case, appellant argues that the prosecutor's personal beliefs regarding the child's credibility were so prejudicial and incurable as to warrant a mistrial because the child's credibility was a crucial factor in this case. However, appellant cites no cases holding that denying a mistrial under such circumstances is an abuse of discretion. Nor does appellant provide a rationale to show how such comments by a prosecutor would cause a rational jury to find the child's testimony credible if it had not found it so when it was given. Accordingly, appellant's fourth point of error is overruled.

### Outcry Testimony

Appellant's fifth and sixth points of error argue the trial court erred in allowing the child's mother and Officer Valenta, respectively, to testify as "outcry" witnesses because: (1) the child's grandmother was the first adult to whom an outcry was made; and (2) with only one act of misconduct, testimony of multiple outcry witnesses was not proper.

■ A trial court's evidentiary ruling is reviewed for abuse of discretion and will be upheld if correct on any theory of law applicable to the case, in light of what was before the trial court when the ruling was made. *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App.2004). Thus, the admission of hearsay testimony will be upheld on appeal if evidence before the trial court satisfied a hearsay exception, even if a different one than that urged by the proponent at trial. *See McDuff v. State,* 939 S.W.2d 607, 619 (Tex.Crim.App.1997). A statement made while the declarant was under the stress of excitement caused by a startling event or condition is not excluded by the hearsay rule. TEX.R. EVID. 803(2).

In this case, the child testified that her mother was the first person she told about the incident and that she told her about it on the day it happened. Her mother testified that, on the day of the offense, after receiving a phone call from the child's grandmother, she immediately drove straight to the apartment to get the child. When she got there, the child was crying and "really emotional," and the mother took her home. After arriving home, shortly after the incident, the mother talked to the child in detail about what happened. During this conversation, the child was crying. Although the State urged the outcry exception to overcome appellant's hearsay objection to the mother's testimony about what the child had told her, it would have been within the trial court's discretion to instead admit the hearsay evidence as an excited utterance. Therefore, appellant's fifth point of error is overruled.

With regard to appellant's sixth point of error, when the prosecutor asked Valenta whether the child had told him whether appellant had touched her, appellant objected based on hearsay. The prosecutor responded:

> Defense counsel asked [the child] over and over and over did she tell this witness that [appellant] just touched her; over and over, repeatedly as if to elicit response that this witness was somehow making it up. And I'm trying to establish from this witness if that's not true.

To the extent this rationale offered by the prosecutor was the trial court's basis for overruling appellant's hearsay objection, his brief on appeal provides no authority or reasoning addressing it at all, let alone demonstrating that it failed to overcome his objection. Because appellant's sixth point of error thus affords no basis for relief, it is overruled, and the judgment of the trial court is affirmed.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The trial court admitted over appellant's objection testimony of two extraneous offenses that appellant allegedly committed after the charged offense occurred. Appellant allegedly perpetrated these extraneous offenses on another child, who was not present when the charged offense took place. Despite appellant's timely request, the State did not give appellant reasonable notice in advance of trial of its intent to introduce this evidence. Because these alleged extraneous offenses are not same-transaction contextual evidence, the trial court erred in admitting this evidence. However, because the record in this case shows that this error does not affect appellant's substantial rights, the admission of the evidence was harmless. Therefore, this court is correct to overrule appellant's third issue and affirm the judgment of the trial court.

### The Extraneous Offenses

Over appellant's objection, the trial court allowed the complainant, T.D., to testify in the guilt-innocence phase as to extraneous offenses appellant allegedly perpetrated on B.C., T.D.'s young cousin, after B.C. arrived in the apartment later in the day on which the charged offense occurred. Although the extraneous offenses to which T.D. testified occurred on the same day as the charged offense, these offenses allegedly took place after the charged offense already had been completed. Further, B.C., the alleged victim of these extraneous offenses, was not even present when the charged offense against T.D. occurred.

Although the State gave appellant reasonable notice of its intent to introduce other related extraneous offenses allegedly committed by appellant against B.C. later in the day on which the charged offense occurred, the notice provided by the State did not reasonably apprise appellant of the State's intent to introduce the evidence that is the subject of appellant's third issue.

**Requirements to Qualify as Same–Transaction Contextual Evidence**

The State argues, and the majority concludes, that no notice was necessary under Texas Rule of Evidence 404(b) because the evidence in question was same-transaction contextual evidence. *See* TEX.R. EVID. 404(b). Same-transaction contextual evidence is evidence of other offenses connected with the primary offense. *Mayes v. State*, 816 S.W.2d 79, 86 (Tex.Crim.App. 1991). To qualify as same-transaction contextual evidence, the connection must be so close that it would be difficult to adequately testify about the primary offense without mentioning the extraneous offense. *Id.* at 86 n. 4. When, however, the facts of the primary offense can be understood on their own, notice is needed for evidence about extraneous offenses. *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex.Crim.App. 1995).

The primary offense in this case—appellant's indecency with a child, T.D.—can be fully understood without testimony of the extraneous offenses in question—appellant's alleged indecency with B.C. This is because everything appellant was accused of having done to T.D., such as having her straddle his leg, kissing her breast, or asking to see under her dress, is fairly simple, straightforward, and capable of being understood on its own. Thus, evidence about subsequent extraneous of-

fenses involving B.C. should not have been introduced without notice because these offenses cannot be classified as same-transaction contextual evidence. *See Hayden v. State*, 13 S.W.3d 69, 74–75 (Tex. App.-Texarkana 2000, pet. ref'd) (holding that evidence of other sexual misconduct by appellant was not same-transaction contextual evidence).

The majority concludes that testimony about the extraneous offenses in this case was correctly admitted as same-transaction contextual evidence because the two offenses were alleged to have occurred in close spatial and temporal proximity to the charged offense. However, in *Camacho v. State*, the Court of Criminal Appeals effectively rejected attempts to define what constitutes same-transaction contextual evidence using temporal or spatial proximity. *See* 864 S.W.2d 524, 532 (Tex.Crim.App. 1993). In *Camacho*, the extraneous offense occurred four days after the primary offense, in a different state, and had different victims, but was still held to be admissible as same-transaction contextual evidence. *Id.* This holding strongly suggests that the sole determinant of what constitutes same-transaction contextual evidence is the standard from *Mayes:* whether the evidence is essential to understand the nature of the crime alleged. *See Camacho*, 864 S.W.2d at 532. In this case, hearing testimony about the alleged extraneous offenses involving B.C. is not essential to understand the primary offense involving T.D. *See Hayden*, 13 S.W.3d at 74–75.

**Lack of Notice Under Texas Rule of Evidence 404(b)**

In its appellate brief, the State alleges that it gave appellant reasonable notice of its intent to introduce evidence of extraneous offenses as required by Texas Rule of Evidence 404(b) when it informed appellant that it intended to introduce evidence

that he had touched B.C.'s breast. However, the State did not indicate it would introduce evidence about appellant pulling down B.C.'s pants and underwear or asking B.C. to touch his "private area." Just as a defendant is not required to make inferences about the State's intent from a subpoena list or other documents in the file, a defendant should not be required to make inferences about whether the State has submitted an exhaustive list of alleged extraneous offenses it intends to introduce into evidence. *See Webb v. State*, 36 S.W.3d 164, 179 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc) (holding that State's listing of complainant from another case on its subpoena list did not constitute reasonable notice under Texas Rule of Evidence 404(b)). Consequently, the State's notice of its intent to introduce evidence of one incident involving the touching of B.C.'s breast did not constitute reasonable notice of an intent to introduce evidence about the other two incidents, and it was an abuse of discretion for the trial court to admit this evidence.

### Harm Analysis

The next step is to perform a nonconstitutional harm analysis[1] to determine whether a substantial right was violated. *Id.* at 181. Because neither party has the burden of showing the error violates a substantial right, we look to the record to determine the effect of the error. *Id.* To perform a harm analysis as to the erroneous admission of evidence despite failure to give the reasonable notice required under Rule 404(b), the court should consider whether the trial court's admission of the evidence of extraneous offenses notwithstanding the State's failure to give the requisite notice constitutes an error that substantially influenced the jury's decision. *Id.* at 183. In making this determination, we evaluate the impact on the appellant's ability to present a viable defense and any other effect the lack of notice might have had on the proceedings, that is, whether it so hampered the appellant's defense that it affected a substantial right. *Id.*

In considering the impact of the error on appellant's ability to defend, we look to whether the defense was able to effectively cross-examine the witness through whom the extraneous offense evidence was introduced. Notably, after the trial court ruled that the evidence of the extraneous offenses in question would be allowed, the defense did not claim to be surprised by T.D.'s testimony regarding these alleged offenses, and the defense did not request a continuance or otherwise seek a delay in the trial. Moreover, there is nothing in the record to indicate appellant suffered any actual prejudice as a result of a lack of time to prepare for the cross-examination of T.D. regarding these alleged extraneous offenses. Under these circumstances, the trial court's error in allowing the admission of evidence of these extraneous offenses without the requisite notice from the State did not affect the outcome. *See id.* Because the trial court's error was harmless, this court is correct to overrule appellant's third issue and affirm the trial court's judgment.

---

1. The only objection appellant voiced to the admission of the extraneous offenses in question was the lack of notice. Therefore, we conduct the harm analysis appropriate to the erroneous admission of extraneous-offense evidence as to which no reasonable notice was given. *See Webb*, 36 S.W.3d at 183.