COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

MARIE GALLEGOS,                                         No. 08-07-00104-CR

§

      Appellant,                                          Appeal from

§

v.                                                      79th District Court

§

THE STATE OF TEXAS,                                     of Jim Wells County, Texas

§

      Appellee.                                        (TC # 06-04-11893)

§

## O P I N I O N

Marie Gallegos appeals her murder conviction. A jury found Appellant guilty and assessed her punishment at a $10,000 fine imprisonment for a term of seventy-four years. We affirm.

### FACTUAL SUMMARY

On October 24, 2005, Sergeant William Taylor of the Alice Police Department was dispatched to the scene of a house fire. The Alice Fire Department was subsequently called to the scene to extinguish the flames. A short time later, a body was discovered inside the house. Fire Marshall Mitch Wilson arrived at the home to investigate the cause of the fire; he concluded that the fire was set intentionally. Sergeant Taylor, who identified the victim as Jimmy Brown, noticed that Brown's two vehicles were not at the residence and issued a "be on the lookout" to try and locate the vehicles. The medical examiner, Dr. Rey Fernandez, determined that a three-inch stab wound to the neck which severed the carotid artery and jugular vein caused Brown's death.

Later that evening, Jim Wells County Sheriff's Deputy Jose Martinez was dispatched to investigate a report of a suspicious vehicle. Deputy Martinez attempted to stop a yellow station wagon that had been reported as stolen, but the two suspects fled in the vehicle. The vehicle crashed

after a high-speed pursuit. Renee Rosas, a juvenile, was the driver of the vehicle and Appellant sat in the front passenger seat. Deputy Martinez placed Rosas under arrest and other law enforcement officers who had arrived on the scene placed Appellant under arrest. The officer who patted down Appellant removed a knife from her pocket which had bloody residue on it. Deputy Martinez ran the plates on the yellow station wagon and determined that it belonged to the victim, Brown. After being Mirandized, Appellant confessed to stabbing Brown with a knife and setting him on fire.

In her confession, Appellant explained that around 4 a.m., she was out with Jodana Alviar and they stopped at Brown's house because Appellant wanted to borrow money from him. Appellant went into Brown's bedroom and he tried to kiss her. She pushed him back and they started to fight. Appellant pulled out a knife and jumped on top of Brown with her knees on his chest to hold him down. She then stated: "I pushed the knife through his throat and it went all the way through. Jimmie tried to get the knife from me and we fought for the knife and he cut his hands and palms everytime he grabbed the knife blade. He was bleeding and then he fell over the bed." Appellant searched the house for money or anything of value but she found only $40. She took the keys to Brown's car from his pocket and then covered him with a blanket because she knew it would burn quickly. She also gathered other items to that would burn. Appellant and Alviar left in Brown's station wagon at around 5:30 a.m. to get some gasoline and butane to start the fire. They returned with various accelerants including gasoline, lighter fluid, and brake fluid and Appellant poured them throughout Brown's house. Appellant then set some items on fire and lit a rag which she has stuffed in a gasoline can. The gasoline can exploded and they exited the house. Appellant took with her all of the items which had her fingerprints on them and burned them. Appellant used the money she had stolen from Brown's house to pay for gasoline and drove around in Brown's car all day. In the afternoon, Appellant picked up Renee Rosas and they bought crack cocaine and marihuana. They

were smoking crack in an alley when she they saw the police. Appellant told Rosas, who was driving, to not stop when the police were chasing them because she had killed Brown and had stolen his car.

Renee Rosas, who was seventeen years of age at the time of trial, testified that Appellant told her that she and Jodana Alviar went to Brown's house. Appellant told Alviar to wait outside. Appellant said that Brown wanted to have sex with her and she pulled out the knife to trick him. She could see the fear in his eyes when they fought for the knife. Brown attempted to grab Appellant's arms and using both hands she stabbed him in the throat. After she stabbed Brown and could see the blood gushing from his throat, Appellant asked him, "Why don't you die already?" Appellant told Rosas that Brown was "pretty strong for an old man." Brown attempted to grab the phone and call someone, but he was only mumbling. Appellant then called Alviar into the house and asked her to "watch him to make sure he was dead."

The jury found Appellant guilty of murder as alleged in the indictment. At the punishment phase, Appellant testified that she did not go to Brown's house with the intention to kill him and she never wanted to kill him but it just happened. She testified that Brown became upset when she refused to perform oral sex and they began to fight. Appellant became angry that Brown hit her, so she got her knife and stabbed him.

The trial court submitted a special issue to the jury on sudden passion and the jury found that Appellant had not proved by a preponderance of the evidence that Appellant caused Brown's death under the immediate influence of sudden passion arising from an adequate cause. The jury then sentenced Appellant to seventy-four years' imprisonment and a $10,000 fine. The trial court denied Appellant's motion for a new trial and Appellant timely filed notice of appeal.

**SUFFICIENCY OF THE EVIDENCE**

In Points of Error One and Two, Appellant challenges the legal and factual sufficiency of the evidence supporting her conviction. More specifically, she alleges that the evidence is insufficient to prove that she acted intentionally or knowingly as alleged in the indictment.

*Standards of Review*

In reviewing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2181.

Appellate courts are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of an offense. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App. 2000), *citing Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex.Crim.App. 1996). In examining the factual sufficiency of the elements of the offense, all evidence is viewed in a neutral light, favoring neither party. *Clewis*, 922 S.W.2d at 129. In performing our review, due deference is given to the fact finder's determinations. *See Johnson*, 23 S.W.3d at 8-9. Evidence may be factually insufficient if it is so weak that it would clearly be wrong and manifestly unjust for the verdict to stand, or "the adverse finding is against the great weight and preponderance of the available evidence." *Johnson*, 23 S.W.3d at 11. The question that must be

answered when reviewing factual sufficiency is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or proof of guilt, although ample if taken alone, is greatly outweighed by contrary proof. *Id.*

Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the amount of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of the conflict. *Id.* In order to find that evidence is factually insufficient to support a verdict, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* We give appropriate deference to the jury with respect to credibility and weighing of evidence. *Torres v. State*, 141 S.W.3d 645, 662 (Tex.App.--El Paso 2004, pet. ref'd). The jury is the sole judge of witness credibility and is free to believe or disbelieve any witness. *Id.*

*Analysis of the Evidence*

A person commits the offense of murder if she: (1) intentionally or knowingly causes the death of an individual. Tex.Pen.Code Ann. § 19.02(b)(1)(Vernon 2003). The indictment alleged that Appellant intentionally or knowingly caused the death of an individual, James Thomas Brown, by stabbing him in the neck. The application paragraph of the court's charge tracked the indictment. Further, the court's charge defined the culpable mental states as follows:

> A person acts intentionally, or with intent, with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of her

conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of her conduct when he is aware that her conduct is reasonably certain to cause the result.

We first find that the evidence is legally sufficient to prove beyond a reasonable doubt that Appellant intentionally caused Brown's death by stabbing him in the neck. In her confession, Appellant stated:

> We started to fight and I had a knife that I had pulled out. I jumped on him and put my knees on his chest to hold him down. I had the knife blade facing down. I pushed the knife through his throat and it went all the way through. Jimmie tried to get the knife from me and we fought for the knife and he cut his hands and palms everytime he grabbed the knife blade.

Appellant explained that she then covered Brown's body in a blanket because she "knew it would burn quickly" and later returned with gas, lighter fluid, and brake fluid that she poured around the house to help fuel the fire. Appellant told Renee Rosas that she stabbed Brown in the throat using both hands and asked him, "Why don't you die already?" We conclude the evidence is legally sufficient to prove beyond a reasonable doubt that Appellant intentionally caused Brown's death because it was her conscious objective or desire to both engage in the conduct and to cause the result.

The evidence is also factually sufficient to prove that Appellant intentionally caused Brown's death by stabbing him in the neck. Appellant points to the testimony of Renee Rosas that Appellant took the knife out of her pocket to "scare" Brown and argues she acted only recklessly. While this constitutes some evidence that Appellant might not have intended to kill Brown when she pulled the knife out of her pocket, her own confession and statements to Rosas provides evidence that she intentionally stabbed Brown and intended to cause the result. The proof of guilt is not so obviously weak as to undermine confidence in the jury's determination and is not greatly outweighed by contrary proof. Therefore, we find the evidence is factually sufficient to support the verdict. Points

of Error One and Two are overruled.

## CHARGE ERROR

Appellant raises several issues complaining of charge error. Texas law mandates that a trial court submit a charge to the jury setting forth "the law applicable to the case." *Druery v. State*, 225 S.W.3d 491, 505 (Tex.Crim.App. 2007), *quoting* TEX.CODE CRIM.PROC.ANN. art 36.14). An appellant must object to the charge before he may be heard to complain on appeal about "errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts." *Id.*, *quoting Posey v. State*, 966 S.W.2d 57, 61 (Tex.Crim.App. 1998). An appellant will obtain a reversal only if the error was so egregious and created such harm that he or she has not had a fair and impartial trial. *Druery*, 225 S.W.3d at 505. However, if a party "affirmatively seeks action by the trial court, that party cannot later contend that the action was in error." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App. 1999). Further, the law of invited error estops a party from making an appellate error of an action it induced. *Id.*

*Definition of "Intentionally"*

In Point of Error Three, Appellant complains that the trial court's definition of "intentionally" impermissibly shifted the burden of proof to Appellant in violation of his right to due process under the Texas and United States constitutions. The record reflects that Appellant requested that the complete definition of "intentionally," per TEX.PEN.CODE ANN. art. 6.03 (a) and (b)(Vernon 2003), be included in the jury charge, and the trial court granted the request. Since Appellant affirmatively sought action from the trial court, she cannot now contend that the action was in error. *Prystash,* 3 S.W.3d at 531; *see Druery*, 225 S.W.3d at 506 (in a capital murder case, the defendant argued that the trial judge had a duty to *sua sponte* give the jury an instruction on the lesser-included offense of first-degree murder even though the defendant had at trial informed the court that the lesser-included charge not be included; court of criminal appeals held that because appellant induced the alleged error, he was estopped from bringing the charge-error claim on appeal). Under the foregoing authority, Appellant invited her own error and is estopped from asserting on appeal that the jury instruction regarding "intentionally" violated her due process rights. Point of Error Three is overruled.

*Definition of "Conduct"*

In Point of Error Four, Appellant contends that the court's charge is erroneous because it failed to define "conduct," thereby lessening the State's burden of proof. Appellant did not object to this portion of the charge at trial and did not tender a correct instruction.

When reviewing charge error, we first determine if an error actually exists in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If there is charge error, we must then determine if the error caused sufficient harm to warrant reversal. *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex.Crim.App. 1996);

*Almanza*, 686 S.W.2d at 171. Preservation of charge error does not become an issue until we assess harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* When the defendant fails to object, as in this case, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743-44; *Almanza*, 686 S.W.2d at 171.

Under the *Almanza* egregious harm standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from the jury instruction error. *Almanza*, 686 S.W.2d at 174. Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App. 2002). To determine whether a defendant has sustained egregious harm from an instruction to which he did not object, we consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008); *Hutch*, 922 S.W.2d at 171. Harm may be shown by direct evidence or inferred from the record. *Hutch*, 922 S.W.2d at 171.

Under the Penal Code definition, the term "conduct" means an act or omission and its accompanying mental state. TEX.PEN.CODE ANN. § 1.07(10)(Vernon Supp. 2008). A statutorily defined word or phrase should be included in the charge as part of the law applicable to the case. *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex.Crim.App. 1986); *Macias v. State*, 959 S.W.2d 332, 336 (Tex.App.--Houston [14th Dist.] 1997, pet. ref'd). The charge is erroneous because it does not include the statutory definition of "conduct."

Appellant makes no effort to show how the lack of this definition caused egregious harm. When a statutory term is not defined in the jury charge, we are to assume that the jury considered the commonly understood meaning of the term in its deliberations. *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex.Crim.App. 1983). Webster's Dictionary defines "conduct" as "personal behavior; way of acting; bearing or deportment." *Webster's New Universal Unabridged Dictionary* 426 (2003). The commonly understood meaning of "conduct" as used in the context of the court's charge refers to a person's actions but the common meaning does not generally encompass omissions or failure to act. That is immaterial, however, because Appellant was not charged with an omission. Under the charge, the jury was required to find that Appellant's conduct, namely, intentionally stabbing Brown in the neck with a knife, caused his death. We conclude that egregious harm did not result from the trial court's failure to include the statutory definition of "conduct" in the jury charge. Point of Error Four is overruled.

*Lesser Included Offenses*

Appellant raises five points of error related to her argument that the trial court erred by failing to instruct the jury on three lesser-included offenses. A two-pronged test is required to determine whether a jury charge on a lesser-included offense must be given. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* We must decide whether the lesser-included offense fits within the charged offense. *Mathis v. State*, 67 S.W.3d 918, 925 (Tex.Crim.App. 2002). Second, some evidence must exist in the record that if the accused is guilty, he is guilty only of the lesser offense. *Id.* In other words, there must be some evidence from which a jury could rationally acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Mathis*, 67 S.W.3d at 925. The evidence must establish the lesser-included offense as a valid

alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000).

There are two ways in which the evidence may indicate that the accused is guilty of only the lesser offense. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App. 1992), *aff'd*, 913 S.W.2d 564 (Tex.Crim.App. 1995). First, there may be evidence that refutes or negates other evidence establishing the greater offense. *Id.* For example, if a defendant is charged with aggravated robbery and evidence is presented which indicates the defendant may not have used a deadly weapon, a charge on the lesser offense of robbery would be required. *Id.* at 391-92. However, if the defendant simply denies commission of the offense or there is no evidence specifically raising an issue regarding use of the weapon, the charge on the lesser offense would not be required. *Id.* at 392. Second, the accused may be shown to be guilty only of the lesser offense if the evidence presented is subject to different interpretations. *Id.* If the evidence raises two inferences regarding the defendant's awareness of the risk, then the jury should be instructed on both inferences. *See Thomas*, 699 S.W.2d 845, 851 (Tex.Crim.App. 1985).

*Aggravated Assault*

In Point of Error Six, Appellant contends that the jury should have been charged on the lesser-included offense of aggravated assault. She raises a related argument in Point of Error Five wherein she argues that the court erred by failing to charge the jury on the culpable mental state of recklessly so that the jury could consider the lesser included offense of aggravated assault.

A person commits aggravated assault if the person intentionally, knowingly, or recklessly causes serious bodily injury to another or the person uses or exhibits a deadly weapon during the commission of the assault. TEX.PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(Vernon Supp. 2008). Aggravated assault is a lesser included offense of murder. *See Cardenas v. State*, 30 S.W.3d 384, 392 (Tex.Crim.App. 2000). Therefore, the first prong of the lesser-included offense analysis is

satisfied. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

Under the second prong, if any evidence produced at trial would permit a jury to find that Appellant intended to cause serious bodily injury, but did not intend to kill Brown, Appellant may be entitled to a jury instruction on aggravated assault. *See Rousseau*, 855 S.W.2d at 674. A jury charge on aggravated assault would be required "only if testimony was introduced from sources indicating a lack of *intent* on the part of appellant to kill the deceased." [Emphasis in original]. *Dowden v. State*, 758 S.W.2d 264, 269 (Tex.Crim.App. 1988). The evidence showed that Appellant stabbed Brown in the neck with a knife during an argument. Appellant told Rosas that she used both hands to stab Brown in the throat. As Brown was bleeding to death, Appellant asked him, "Why don't you die already?" Further, she called Alviar into the room and instructed her to watch Brown and make sure he was dead. Appellant set Brown's home on fire and removed those items she had touched in order to conceal the crime and her connection to it. There is no evidence that Appellant did not intend to kill Brown. Therefore, the second prong of the lesser-included offense analysis is not satisfied and Appellant is not entitled to a jury instruction on aggravated assault. *See Rousseau*, 855 S.W.2d at 674. Points of Error Five and Six are overruled.

*Criminally Negligent Homicide*

In Point of Error Seven, Appellant maintains she was entitled to an instruction on the lesser-included offense of criminally negligent homicide. She argues in Point of Error Eight that the trial court should have instructed the jury on the culpable mental state of criminal negligence in connection with this lesser included offense.

Criminally negligent homicide is the failure of the actor to perceive the risk created by his conduct, and a charge is not required unless the evidence shows that the actor was unaware of the risk his conduct created. *Saunders*, 840 S.W.2d at 391. The record must contain evidence showing

an unawareness of the risk. *Licon v. State*, 99 S.W.3d 918, 928 (Tex.App.--El Paso 2003, no pet.).

In *Licon*, the appellant shot and killed a man while shooting at a group of people in order to scare them. *Id.* at 921. One witness testified that he did not know where the shots came from, and the other stated that she dropped to the ground when she saw the shooter. *Id.* at 928 (holding that the trial court did not err in refusing to include a charge of criminally negligent homicide because the testimony did not show an unawareness of the risk on the part of the appellant).

The appellant in *Saunders* was convicted of murder for shaking a baby and squeezing its head. *Saunders*, 840 S.W.2d at 391. Circumstances existed from which a jury could conclude appellant knew his treatment of the baby could kill it, but a jury could also conclude based on the same evidence that appellant may not have known his actions could kill, even though he ought to have been aware of the risk. *Id.* (holding that an instruction of criminally negligent homicide should have been given because the evidence presented was subject to different interpretations and raised the issue that the appellant was criminally negligent in squeezing the baby's head).

Similar to *Licon* and in contrast with *Saunders*, there is no evidence in the record to show an unawareness of the risk on the part of Appellant. Again, the evidence showed that Appellant stabbed Brown in the neck and set the house on fire in an effort to cover up the murder. Appellant covered Brown in a blanket because she knew it would burn quickly. The evidence presented was not subject to different interpretations. Therefore, the trial court did not err in failing to charge the jury on the lesser-included offense of criminally-negligent homicide. Points of Error Seven and Eight are overruled.

### *Manslaughter*

In Point of Error Nine, Appellant contends that the trial court erred by not instructing the jury on the lesser-included offense of manslaughter. A person commits manslaughter if he recklessly

causes the death of an individual. TEX.PEN.CODE ANN. § 19.04(a). Manslaughter is a lesser-included offense of murder. *Cardenas*, 30 S.W.3d at 392. Therefore, the first prong of the *Rousseau* test is satisfied.

In *Mathis v. State*, the defendant, convicted of murder, challenged the trial court's refusal to instruct the jury on the lesser-included offense of manslaughter. *Mathis*, 67 S.W.3d at 925. The defendant testified that he did not intend to kill anyone and claimed that he shot the victim in a panic. *Id.* He insisted that he was acting recklessly, not intentionally, but there was no other evidence in support of such theory. *Id.* at 925-26 (holding that appellant failed to satisfy the second prong of the *Rousseau* test because he admitted to aiming and firing the gun and witnesses testified that his actions were calm and collected).

Similar to *Mathis*, the evidence showed that Appellant acted intentionally, not recklessly, when she stabbed Brown in the throat and killed him. We overrule Point of Error Nine.

### Coercive Jury Charge

In Points of Error Ten and Eleven, Appellant argues that the inclusion of a dynamite instruction in the main charge on guilt-innocence impermissibly coerced the jury and forced unanimity among the jurors to reach a verdict. Specifically, Appellant points to language in Article Nine of the charge of the court:

> In order to return a verdict, each juror must agree thereto, but jurors have a duty to consult with one another and to deliberate with a view of reaching an agreement . . . Each juror must decide the case . . . only after an impartial consideration of the evidence with their fellow jurors. In the course of deliberations, a juror should not hesitate to reexamine their own views and change their opinion if convinced it is erroneous.

### Allen Charge

An *Allen*, or "dynamite," charge is a supplemental charge normally given to a deadlocked

jury which directs the jurors to examine the submitted questions and decide the case if the they are able to do so. *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896). However, an *Allen* charge may also be issued in the court's main charge. *Love v. State*, 909 S.W.2d 930, 937 (Tex.App.--El Paso 1995, pet. ref'd). An *Allen* charge is unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case. *See Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex.Crim.App. 1973). While there may be some deficiency in the instruction, as long as it is not coercive, an accused must show that jury coercion or misconduct occurred in fact. *Jackson v. State*, 753 S.W.2d 706, 712 (Tex.App.--San Antonio 1988, pet. ref'd).

We review the decision to give an *Allen* charge under an abuse of discretion standard. *See U.S. v. Wickersham*, 29 F.3d 191, 194 (5th Cir. 1994). Our inquiry focuses on whether it had a coercive effect on juror deliberation. *Howard v. State*, 941 S.W.2d 102, 123 (Tex.Crim.App. 1996). The language used in the charge of the court was not coercive and it did not covey any type of opinion, comment on Appellant's case, or pressure jurors into reaching a particular verdict. *See Arrevalo*, 489 S.W.2d at 571. Further, Appellant did not object to the charge or show that any jury coercion or misconduct occurred as a result of the charge. We therefore overrule Points of Error Ten and Eleven.

*Misleading and Contradictory Instruction*

In Point of Error Twelve, Appellant argues that a portion of the court's charge is misleading and contradicted the court's instruction that the defendant is not required to prove her innocence. The trial court instructed the jury as follows:

> The jury, in determining the guilt or innocence of the Defendant of the offense charged in the indictment, can consider only the evidence or lack of evidence and are to disregard any statement made during the course of the trial, by counsel or the

Court, not supported by the evidence.

Appellant asserts that the portion of the instruction informing the jury that it should consider "the evidence or lack of evidence" is misleading and contradicted the court's instruction that Appellant did not have to prove her innocence. Appellant did not object to the instruction. Therefore, she must show that the instruction is erroneous and that it caused her egregious harm. Appellant has not made any effort on appeal to show that the instruction resulted in egregious harm. Point of Error Twelve is overruled.

## JUVENILE COURT RECORDS

In Point of Error Thirteen, Appellant argues that the trial court erred by denying her motion to release the juvenile records of Renee Rosas and Jodana Alviar. Any requests for discovery of prior convictions of State's witnesses must show good cause, materiality, and possession of those records by the State. *Rodriguez v. State*, 513 S.W.2d 22, 27 (Tex.Crim.App. 1974). Denial of this type of request is never in error if the defendant has not shown that the State possessed the records or had ready access to the records. *Id.* Under the Texas Family Code, juvenile records may only be released to: (1) the judge, probation officers, and professional staff or consultants of the juvenile court; (2) a juvenile justice agency; (3) an attorney for a party to the proceeding; (4) a public or private agency or institution providing supervision of the child by arrangement of the juvenile court; or (5) any other person, agency, or institution having a legitimate interest in the proceeding. *See* TEX.FAM.CODE ANN. § 58.007(b)(Vernon 2008).

In *Taylor v. State*, a trial court decision to deny the defendant's request for production of juvenile arrest records was upheld because the defendant did not show he had made any attempt to obtain the records from the juvenile court system, that the juvenile records existed, or that the State possessed the records. *Taylor v. State*, 755 S.W.2d 548, 551 (Tex.App.--Houston [1st Dist.] 1988,

pet. ref'd). The court of appeals noted that during cross-examination, the defendant did not even ask the witness whether she had a criminal record. *Id.*

Similar to *Taylor*, there is no evidence to show that Appellant made any effort to obtain Rosas's records from the juvenile court, determine whether the records existed, or find out if the State was in possession of such records. Appellant acknowledged Rosas's juvenile record in the memorandum in support of her motion, but only that Rosas had a juvenile record based on "best of [sic] available information." Further, Appellant did not show that the State was in possession of any juvenile records. Accordingly, the trial court did not err in denying Appellant's motion. *See Rodriguez*, 513 S.W.2d at 27; *Taylor*, 755 S.W.2d at 551. Even if the trial court erred by denying the motion, any error is harmless because Appellant cross-examined Rosas about the disposition of her juvenile court charges arising out of this case and Alviar did not testify. Point of Error Thirteen is overruled.

**EXPERT WITNESS TESTIMONY**

In Point of Error Fourteen, Appellant argues that the trial judge abused its discretion in disallowing the testimony of an expert witness who had been subpoenaed and was available at trial. A trial judge has broad discretion in maintaining control and expediting the trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex.Crim.App. 2001). We review the exclusion of an expert witness under an abuse of discretion standard. *Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App. 1992). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). However, if the trial court's decision to admit or exclude the expert testimony is "within the zone of reasonable disagreement," it does not abuse its discretion. *See Kelly*, 824 S.W.2d at 574.

The trial court was aware that Appellant had a scheduling conflict with Dr. Troy Martinez, a psychologist who was expected to testify as to Appellant's state of mind. When the trial court asked Appellant to call her next witness and Dr. Martinez was not present, Appellant rested her case. After the noon recess, the trial court learned that Dr. Martinez was available so the court gave Appellant an opportunity to have Martinez testify during the guilt-innocence phase of the trial. Appellant's counsel declined the offer, stating he would offer the testimony during the punishment phase if necessary.

The record does not support Appellant's contention that the trial court disallowed the expert witness's testimony. To the contrary, the trial court gave Appellant an opportunity to present the testimony during the guilt-innocence phase of trial, but Appellant rejected the offer. The record does not show any abuse of discretion on the part of the trial court. We therefore overrule Point of Error Fourteen.

**EXTRANEOUS OFFENSE**

In Point of Error Fifteen, Appellant asserts that the trial court abused its discretion by admitting the evidence showing the commission of arson because it is an extraneous offense. She argues in Point of Error Sixteen that a limiting instruction should have been given.

We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006). This standard requires an appellate court to uphold a trial court's decision to admit evidence decision when that decision is within the zone of reasonable disagreement. *Id*. An appellate court would misapply the appellate abuse of discretion standard of review to reverse a trial court's admissibility decision solely because the appellate court disagreed with it. *Id*.; *see also Robbins v. State*, 88 S.W.3d 256, 259-60 (Tex.Crim.App. 2002).

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX.R.EVID. 404(b). However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* In order for evidence of other crimes to be admissible, it must be relevant for a purpose other than to show the character of a person and that he acted in conformity with it. *See* TEX.R.EVID. 404(b).

"Same transaction contextual evidence" is evidence that reflects the context in which a criminal act occurred. *Wesbrook*, 29 S.W.3d at 115. To be admissible under Rule 404(b), same transaction contextual evidence must be necessary to the jury's understanding of the offense. *Id.* at 115. Thus, necessity is the "other purpose" for which same transaction contextual evidence is admissible. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993). Necessity may exist either because: (1) several offenses are so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating one, it is impracticable to avoid describing the other; or (2) the

same transaction contextual evidence tends to establish some evidentiary fact, such as motive or intent. *McDonald v. State*, 148 S.W.3d 598, 602 (Tex.App.--Houston [14th Dist.] 2004), *aff'd by* 179 S.W3d 571 (Tex.Crim.App. 2005).

Upon a timely request, the State must give notice of its intent to introduce "other purpose" extraneous offense evidence "other than that arising in the same transaction." *See* TEX.R.EVID. 404(b). Although necessity is required for same transaction contextual evidence to be relevant under Rule 404(b) for a purpose other than character conformity, it is not required if evidence arises from the same transaction; this evidence is exempt from the Rule 404(b) notice rule. *McDonald*, 148 S.W.3d at 602.

The appellant in *McDonald* challenged his conviction of indecency with a child, arguing that the trial court erred in admitting testimony regarding an extraneous offense because the State failed to give adequate notice of its intent to use the evidence at trial. *McDonald*, 148 S.W.3d at 600. The victim testified that on the same day of the offense, during the same visit, and a short time after the offense, appellant: (1) pulled down a cousin's clothes and exposed her; and (2) asked the cousin to touch him inappropriately. *Id.* at 602. (finding that trial court had discretion to conclude that evidence arose from same transaction and notice was not required because the evidence was closely related in time, location, and subject matter with the charged offense).

The State was not required to give notice of its intent to introduce Fire Marshall Wilson's testimony about the arson. Under Rule 404(b), notice is required only when "other purpose" extraneous offense evidence is introduced that does not arise out of the same transaction. *See* Tex.R.Evid. 404(b). The "other purpose" extraneous offense evidence offered by the State regarding the arson arose out of the same transaction as the murder. Like *McDonald*, the evidence of the arson was closely related in time, location, and subject matter to the charged offense of murder.

*McDonald*, 148 S.W.3d at 602. This same transaction contextual evidence was necessary to the jury's understanding of the offense. *McDonald*, 148 S.W.3d at 602. Thus, the State was not required to give notice of Wilson's testimony under Rule 404(b) and the trial court did not err in allowing the evidence or failing to include a limiting instruction. *See* Tex.R.Evid. 404(b); *McDonald*, 148 S.W.3d at 602. Points of Error Fifteen and Sixteen are overruled.

## ADMONISHMENT OF COUNSEL

In Point of Error Seventeen, Appellant maintains that the trial court rendered her attorney ineffective by admonishing counsel in front of the jury about disrupting the proceedings, ordering him to sit down, and threatening him with contempt during attempted cross-examination of Jodana Alviar and Renee Rosas. Further, Appellant contends that the trial judge was "conveying to the jury, that [A]ppellant's counsel was engaging in chicanery or in an improper manner in defending [A]ppellant, prejudicing and harming [A]ppellant by 'poisoning' the jury against her." Appellant argues that the court, by its conduct, rendered trial counsel ineffective.

### *Fifth Amendment Protection*

When parties are aware that a witness will invoke the Fifth Amendment, no party is allowed to call that witness to testify in the presence of a jury. *See McKaine v. State*, 170 S.W.3d 285, 293 (Tex.App.--Corpus Christi 2005, no pet.), *citing* Tex.R.Evid. 513(d). The trial court was aware that Jodana Alviar would invoke her Fifth Amendment right to self-incrimination if she were called to testify. Since Appellant's counsel would not be allowed to call Alviar as a witness, the trial court did not render Appellant's counsel ineffective. *See id.*

### *Trial Judge's Conduct*

A trial court may not comment, discuss, or convey its opinion on the admissibility of evidence in a case. TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1979). The court can interrupt

parties' questioning if it is to correct misstatements or misrepresentations of previous testimony. *See Jasper*, 61 S.W.3d at 421. A trial judge's irritation at the defense attorney does not translate to comments or opinions about the defendant's guilt or innocence. *Id.* A trial judge has broad discretion in maintaining control and expediting the trial. *Id.*

Appellant alleges that her counsel was rendered ineffective when the trial judge, in front of the jury, accused her attorney of deliberately disrupting the proceedings, prevented him from making objections, and threatened him with jail time. However, the record reflects that this exchange happened without the jury present. Additionally, the judge threatened Appellant's counsel with contempt of court and jail time because the judge felt counsel was disrupting the proceedings over objections previously ruled upon. The trial judge was simply exercising discretion and taking action to maintain control of the court and expedite the trial. *See Jasper*, 61 S.W.3d at 421. Therefore, the trial court's conduct did not render Appellant's counsel ineffective. Point of Error Seventeen is overruled.

## SUDDEN PASSION

In Point of Error Eighteen, Appellant contends that the evidence is factually insufficient to support the first degree murder conviction because the evidence showed that she caused Brown's death under the immediate influence of sudden passion. We interpret this point of error as challenging the jury's negative finding on the sudden passion issue during the punishment phase.

At the punishment stage of a trial, the accused may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX.PEN.CODE ANN. § 19.02(d). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree. *Id.*

"Sudden passion" means "passion directly caused by and arising out of provocation by the

individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX.PEN.CODE ANN. § 19.02(a)(2). Sudden passion does not include feeling strange or upset. *Cleveland v. State*, 177 S.W.3d 374, 391 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). In most cases, sudden passion is resolved exclusively by the jury's assessment of whether the witness is credible. *Id*. at 389. Adequate cause is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX.PEN.CODE ANN. § 19.02(a).

When a defendant seeks appellate review of a jury's failure to make a finding on which the defendant has the burden of proof, such as on an affirmative defense, the defendant invokes our factual review jurisdiction. *See Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex.Crim.App. 1990). We review a challenge to the factual sufficiency of the evidence on sudden passion using the same standard of review as a challenge to the rejection of an affirmative defense. *See Naasz v. State*, 974 S.W.2d 418, 421 (Tex.App.--Dallas 1998, pet. ref'd). That standard requires us to consider all of the evidence in a neutral light to determine whether the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See Meraz*, 785 S.W.2d at 155; *see also Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). We are to afford due deference to a jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006). We must reach "a high level of skepticism" before reversing a jury's verdict on this basis. *Roberts*, 220 S.W.3d 524.

Sudden passion must arise from an adequate cause. *See* TEX.PEN.CODE ANN. § 19.02(d). Appellant offered evidence that Brown became upset when she refused to perform oral sex. Brown put his hand behind her neck and pushed her head down toward his genitals. Appellant pushed him

away, and Brown slapped her across the face. Appellant became angry because he slapped her and she got her knife. A slap in the face would not produce such a degree of anger, rage, or resentment in a person of ordinary temper sufficient to render Appellant's mind incapable of cool reflection. *See Bradshaw v. State*, 244 S.W.3d 490, 503 (Tex.App.--Texarkana 2007, pet. ref'd)(the discovery of a spouse's extramarital affair was not adequate cause for murder); *Cleveland*, 177 S.W.3d at 390 (no adequate cause arising from the immediate influence of sudden passion was found where a defendant's wife served him with divorce papers, and he subsequently stabbed her to death, while remaining calm and without becoming upset afterwards). The evidence is factually sufficient to support the jury's implied determination that any sudden passion did not arise from an adequate cause. *See* TEX.PEN.CODE ANN. § 19.02(a)(1). The evidence is therefore factually sufficient to support the jury's negative finding on the sudden passion special issue. Point of Error Eighteen is overruled.

## CUMULATIVE ERROR

Appellant argues that her conviction should be reversed because of cumulative error. We have rejected each of Appellant's points of error. Without error, there is no cumulative effect. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999). Therefore, we affirm the trial court's judgment.

August 26, 2009

             ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)