

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00165-CR

_____

BRIAN LEE SPORN, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR16-0651

_____

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Brian Lee Sporn appeals his conviction for indecency with a child. In four issues, Sporn raises complaints concerning his indictment and the sufficiency of the evidence. We will affirm.

## I. Background

On May 25, 2015, Sporn's stepdaughter Sarah invited her friend Jane[1] to spend the night. That evening, after Jane retired to bed, Sporn entered the room. Sporn approached the bed, lifted Jane's shirt, and placed his mouth on her breasts. He then performed oral sex on her, forced Jane to perform oral sex on him, and briefly had sexual intercourse with her. Upon hearing a noise in the hall, Sporn stopped and briefly left the room. Jane seized the moment to run out of the house. As she walked down the road, she called her boyfriend to pick her up and take her to the hospital. Jane was sixteen years old at the time.

On August 25, 2016, Sporn was indicted on two counts. Count I charged him with sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011(a)(2). Count II charged him with indecency with a child by contact. *See id.* § 21.11(a)(1).

The case was tried before a Parker County jury. The jury found Sporn not guilty on the sexual assault count but guilty on the indecency count. After a trial on punishment, the jury found it "true" that Sporn had a prior Oklahoma conviction for

---

[1]We use pseudonyms to protect the complainant's identity. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005).

a child sexual offense.  Pursuant to penal code section 12.42(c)(2)(B), the trial court automatically enhanced Sporn's sentence to life in prison.[2]  *See id.* § 12.42(c)(2)(B). Sporn appeals.

## II.    Amendment or Abandonment?

By his first issue, Sporn contends that the trial court unlawfully permitted the State to amend the indictment after the State closed its case in chief.  The indecency count of the indictment initially charged Sporn with engaging "in sexual contact by touching [Jane's] breast *or female sexual organ*."  [Emphasis added.]  However, at the charge conference, the trial court permitted the State to exclude the phrase "or female sexual organ," leaving only the accusation that Sporn had engaged in sexual contact by touching Jane's breast.  Sporn complains that the trial court erred by allowing the State to amend the indictment to exclude this language, in violation of his rights under code of criminal procedure article 28.10.[3]

---

[2]If a defendant is convicted of certain sexual offenses and he has a prior conviction for one of the sexual offenses listed in section 12.42(c)(2)(B), the punishment is an automatic life sentence.  *Anderson v. State*, 394 S.W.3d 531, 535 (Tex. Crim. App. 2013).  The Legislature provided that the same enhancement applies if the defendant has previously been convicted of an offense under the laws of another state "containing elements that are substantially similar to" the elements of an enumerated Texas offense.  *Id.* (quoting Tex. Penal Code Ann. § 12.42(c)(2)(B)).  On appeal, Sporn does not dispute that his prior Oklahoma conviction was for an offense that is substantially similar to an enumerated Texas offense.

[3]Sporn also asserts that the trial court violated his rights under the Fifth and Fourteenth Amendments of the United States Constitution; article I, sections 10, 11, 13, and 19 of the Texas constitution; and Texas Code of Criminal Procedure articles 1.04, 1.05, 1.141, 19.01–.42, 20.01–.22, 21.02–.31, and 25.01–.04.  However, Sporn

3

Article 28.10 provides, in pertinent part, as follows: "An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." Tex. Code Crim. Proc. Ann. art. 28.10(c).

The court of criminal appeals has drawn a distinction between the "amendment" of an indictment and the "abandonment" of language in an indictment. *See Eastep v. State*, 941 S.W.2d 130, 133 (Tex. Crim. App. 1997), *overruled on other grounds by Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000), *and by Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001); *Kenley v. State*, No. 2-06-127-CR, 2006 WL 2925159, at *6 (Tex. App.—Fort Worth Oct. 12, 2006, no pet.) (mem. op., not designated for publication). An amendment is an alteration to the face of the charging instrument that affects the substance of the charging instrument. *Eastep*, 941 S.W.2d at 132. Conversely, an abandonment does not affect its substance. *Moore v. State*, 54 S.W.3d 529, 546 (Tex. App.—Fort Worth 2001, pet. ref'd). An amendment triggers the requirements of article 28.10, but an abandonment of language in the indictment does not. *Kenley*, 2006 WL 2925159, at *6; *see Eastep*, 941 S.W.2d at 133.

---

never informed the trial court of his additional objections under these constitutional and statutory provisions. *See* Tex. R. App. P. 33.1(a). Instead, Sporn only objected under article 28.10. We therefore limit our consideration to Sporn's argument concerning article 28.10.

4

It is "well-established" that the State's election not to proceed on one offense does not constitute an amendment of the charging instrument. *In re S.V.*, No. 04-03-00806-CV, 2004 WL 1195827, at *1 (Tex. App.—San Antonio June 2, 2004, no pet.) (mem. op., not designated for publication); *see Epperson v. State*, 330 S.W.2d 445, 446 (Tex. Crim. App. 1959) ("The submission of only one of several counts would not constitute an amendment or alteration of the indictment."); *Williams v. State*, No. 03-02-00561-CR, 2004 WL 635262, at *3 (Tex. App.—Austin Apr. 1, 2004, pet. ref'd) (mem. op., not designated for publication) ("The abandonment of a count by the State does not constitute an amendment of the indictment for which any particular formality is required."); *Etchieson v. State*, 653 S.W.2d 930, 933 (Tex. App.—Dallas 1983, pet. ref'd) ("Appellant, in his brief, acknowledges . . . that the State can properly strike counts after the commencement of trial."); *see also Robinson v. State*, 415 S.W.2d 180, 182 (Tex. Crim. App. 1967) (holding that the abandonment of an enhancement paragraph was not an amendment).

Such was the case here. The prohibition on "sexual contact" with a minor "criminalizes three separate types of conduct—touching the anus, touching the breast, and touching the genitals with the requisite mental state." *Loving v. State*, 401 S.W.3d 642, 648 (Tex. Crim. App. 2013) (quoting *Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007)). Because the subsection prohibits the commission of any one of those acts, each act is a separate offense. *Id.*; *see Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007). Thus, within Count II, the original indictment alleged that

5

Sporn committed two offenses of indecency by sexual contact: sexual contact by touching Jane's breast and sexual contact by touching Jane's genitals. The trial court merely allowed the State to abandon one of those offenses while retaining the other, which did not constitute an amendment under the meaning of article 28.10. *See Epperson*, 330 S.W.2d at 446. Because there was no amendment, the requirements of article 28.10 were never invoked.[4] *See Eastep*, 941 S.W.2d at 133. We therefore overrule Sporn's first issue.

### III.    Allegations Concerning Intent

By his second issue, Sporn contends that the indictment erroneously included an intent element that is not mentioned by the indecency statute. The indictment alleged that Sporn engaged in sexual contact "intentionally and knowingly, with the intent to arouse and gratify the sexual desire of said defendant." Sporn directs our attention to subsection 21.11(a)(1), which provides that a person commits the offense of indecency by contact if the person "engages in sexual contact with the child or

---

[4]To argue that his indictment was impermissibly amended, Sporn principally relies on *Hillin v. State*, 808 S.W.2d 486, 487 (Tex. Crim. App. 1991) (plurality op.). There, on the second day of trial, the State substituted one manner and means—injuring the victim "by throwing porcelain"—for another—injuring the victim "by throwing a commode." *Id.* at 486–87. The plurality found that this was an amendment of the sort forbidden by article 28.10. *Id.* at 489.

We find *Hillin* distinguishable. This case does not deal with an interchange of manner and means, it involves two separate offenses, one of which was omitted entirely. Unlike *Hillin*, the State did not seek to replace the omitted material with new allegations during trial. The alteration was thus a permissible abandonment, not an amendment as in *Hillin*.

6

causes the child to engage in sexual contact"; Sporn points out that no intent element is mentioned in this particular subsection. *See* Tex. Penal Code Ann. § 21.11(a)(1). Sporn argues that because no intent is mentioned, intent is not an element of the crime, and the indictment was therefore erroneous for including a surplus allegation regarding intent.

Sporn misreads the indecency statute. "Sexual contact" is a defined term requiring that the forbidden acts be "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c). Thus, the courts of Texas have recognized that intent is an element of indecency. *See Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *McDonald v. State*, 148 S.W.3d 598, 600 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 179 S.W.3d 571 (Tex. Crim. App. 2005); *Gonzales v. State*, 4 S.W.3d 406, 412–13 (Tex. App.—Waco 1999, no pet.); *Couchman v. State*, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref'd). We therefore cannot agree that the State was somehow prohibited from alleging this element of the offense. Indeed, the State was required to make this allegation or else risk a failure of the indictment. *See Wood v. State*, 560 S.W.3d 162, 168 (Tex. Crim. App. 2018) ("An indictment charging a consummated offense must properly charge all of the elements of that offense."). We overrule Sporn's second issue.

Within his third and fourth issues, Sporn couches the same theory concerning intent in slightly different terms. He argues that because the indictment wrongly alleged that he acted with intent to arouse and gratify his own sexual desire, this

7

interferes with the exercise by which we judge the sufficiency of the evidence: we cannot, he says, measure the sufficiency of the evidence against a hypothetically correct jury charge because the State alleged a non-offense. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (describing sufficiency review under a hypothetically correct charge).

We disagree. Again, the intent allegation was not a foreign body that invaded and tainted the indictment. It was a natural and necessary part of the indictment, and it does not impair our ability to draw up a hypothetically correct charge. Sporn's intent arguments are without merit.

Beyond this, Sporn does not challenge the sufficiency of the evidence, per se. Rather, as we read his brief, he uses sufficiency solely as a vehicle to reurge his intent theory.

Nevertheless, in an abundance of caution, we proceed to address the sufficiency of the evidence in the following section.

### IV. Sufficiency of the Evidence

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789;

8

*Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*

A person commits the offense of indecency with a child if he touches the breast of someone younger than seventeen years of age with the intent to arouse or gratify the sexual desire of anyone. Tex. Penal Code Ann. § 21.11(a)(1), (c)(1). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all the surrounding circumstances. *Bazanes v.*

9

*State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd).  A complainant's testimony alone is sufficient to support a conviction for indecency with a child.  *Id.*; *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.).

Jane testified that she was long-time friends with Sporn's stepdaughter Sarah and that she spent the night at Sarah's house often.  Sporn had recently married Sarah's mother.  Mike Dewitt testified that at the time, he supervised Sporn as a registered sex offender due to his prior Oklahoma conviction for indecent acts with a child.

Jane testified that on the weekend of May 25, 2015, Sarah invited her to stay over.  They spent Friday night socializing and eating.  The following day, Sarah, Jane, Sporn, and Sarah's uncle drove to the store to buy cigarettes.  On the way home, Sporn sat in the back seat with Jane.  Sporn put his hand on her thigh.  He began to rub her leg upward and touched her groin over her pants.  Jane testified, "I really just froze.  I didn't really know what to do."  The experience made Jane very uncomfortable, so she kept her distance from Sporn after that.

That night, Jane and Sarah watched horror movies until 1 a.m.  Sarah fell asleep on the couch, so Jane went to sleep in Sarah's bed.  Sarah's younger siblings were already asleep, and Sarah's uncle was at the computer.

Jane wore shorts and a tank top to bed.  She testified, "I was just about to doze off, and then that's when Mr. Sporn came into the room."  Sporn turned on the light and asked Jane what she was doing.  According to Jane, Sporn came to the side of the

10

bed, and she was lying in the middle of the bed. Sporn motioned for Jane to come towards him. Jane scooted closer to the wall. Sporn said, "No," and he leaned onto the bed, pulled Jane towards him, and began to lift her shirt. According to Jane, Sporn "licked and bit" her breasts. He then lowered her shorts and her underwear, and he performed oral sex on her. Sporn attempted to kiss her. When she pulled away, Sporn grabbed her face and kissed her. Sporn unzipped his pants, pulled her shoulders towards him, and forced his penis into her mouth. He then put his penis inside her vagina.

Jane testified that Sporn soon stopped because he thought he heard a noise in the hall. Sporn left to make sure no one was coming, telling Jane that "he'd be back for more." Jane testified that she grabbed her backpack, put on a jacket, and left the house. Jane ran. She testified, "I was trying to get to the main road. I also knew right off the main road, there was also a Fire Department," which she believed would be a safe place. According to Jane, she was scared and crying, and she wanted to go to a hospital to have a rape kit performed.

Jane testified that as she walked down the road, she saw a truck that she recognized from Sarah's house. Believing that it was Sporn looking for her, she jumped in a ditch with tall grass and hid.

Jane called her boyfriend and sent her location to him. Jane's boyfriend testified that when Jane called him, she was distraught. When he picked her up, Jane

was crying and out of breath. Jane indicated to him that she wanted to go to the hospital, saying, "I was raped."

At the hospital, Jane had a rape examination performed at 5:12 a.m. She described her encounter to Kellie Bunch, a sexual-assault nurse examiner. At trial, Bunch read a narrative summary of Jane's account, which was highly similar to Jane's testimony in court. Detective Josh Pitman testified that a swab of Jane's breast came back positive for Sporn's DNA.

Jane's testimony would allow the jury to find all elements of indecency, as they are defined by a hypothetically correct jury charge. *See Queeman*, 520 S.W.3d at 622; *Bazanes*, 310 S.W.3d at 40. Jane testified that she was under the age of seventeen and that Sporn touched her breast, and the jury could reasonably infer the requisite intent from Jane's account of Sporn's actions. *See Bazanes*, 310 S.W.3d at 40. Jane's testimony was corroborated by her boyfriend, by the account that Jane gave to a nurse at the hospital, and by testing which found Sporn's DNA on her breast. Based on the cumulative force of this evidence, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Queeman*, 520 S.W.3d at 622. We overrule Sporn's third and fourth issues.

## V.    Conclusion

Having overruled all of Sporn's issues, we affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 6, 2019