**Affirmed and Memorandum Opinion filed January 21, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00434-CR

**JOHN D. GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1439248**

## MEMORANDUM OPINION

A jury found Appellant John D. Garcia guilty of indecency with a child by contact and assessed punishment at three years' confinement. *See* Tex. Penal Code Ann. § 21.22. On appeal, Appellant challenges the sufficiency of the evidence supporting his conviction. For the reasons below, we affirm.

### BACKGROUND

Appellant and Complainant attended the same church in north Houston,

where Appellant worked as a youth leader. Appellant became close with Complainant's family and would regularly spend the night at their house. In 2013, Complainant reported to the police that Appellant had molested her on one of these occasions approximately six years earlier, when she was 12 years old. A jury found Appellant guilty of indecency with a child and Appellant timely appealed.

## ANALYSIS

In two issues, Appellant argues the evidence adduced at trial (1) was not legally sufficient to support his conviction, and (2) was not factually sufficient to support his conviction.

We begin by addressing Appellant's second contention. In making this argument, Appellant "asks this court to revisit the proscription against a factual sufficiency review" because the "proscription is unconstitutional, and effectively a denial of due process". This "proscription" stems from *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.), in which the Court of Criminal Appeals held that "the *Jackson* . . . legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id*. at 895.

As an intermediate appellate court, we are "bound to follow the law as declared by the state's highest courts." *Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (internal quotation omitted). And here, where the Court of Criminal Appeals has "deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation." *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Accordingly, we apply only a legal sufficiency standard of review in determining whether the evidence is sufficient to support Appellant's conviction.

2

*See, e.g., Mayer*, 494 S.W.3d at 848; *Mason*, 416 S.W.3d at 727-28; *accord Houston v. State*, No. 14-18-00726-CR, 2020 WL 1883421, at \*2 (Tex. App.— Houston [14th Dist.] Apr. 16, 2020, pet. ref'd) (mem. op., not designated for publication).

## I.        Standard of Review and Governing Law

For a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). The jury is the sole judge of the credibility and the weight of the evidence and may draw any reasonable inference from the evidence so long as it is supported by the record. *Ramsey*, 473 S.W.3d at 809. Therefore, as the reviewing appellate court, our role is to determine whether the necessary inferences made by the jury are reasonable based on the cumulative force of all evidence presented at trial. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We do not reevaluate the weight and credibility of the evidence nor do we substitute our judgment for that of the jury. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). It is the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*.

To obtain a conviction for indecency with a child by contact, the State must prove that the defendant engaged in sexual contact with a child under the age of 17 years old. Tex. Penal Code Ann. § 21.11(a)(1). As relevant here, "sexual contact" includes a person's "touching through clothing" any part of the genitals of a child if those acts are committed with the intent to arouse or gratify the sexual desire of

any person. *Id*. § 21.11(c)(1). The specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, the defendant's remarks, and the surrounding circumstances. *McDonald v. State*, 148 S.W.3d 598, 600 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 179 S.W.3d 571 (Tex. Crim. App. 2005). A child-victim's uncorroborated testimony may support a conviction for indecency with a child if, at the time of the alleged offense, the victim was 17 years old or younger. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *see also Cantu v. State*, 604 S.W.3d 590, 593 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

## II.     Evidence

Testifying at trial, Complainant said she met Appellant at church when she was 11 or 12 years old and Appellant was in his early twenties. According to Complainant, Appellant eventually became something like an "older brother" to her family and would pick up her and her siblings from school and lead them in Bible studies at their home. Complainant said Appellant would regularly spend the night at their home, staying there "at least once a week, eventually." On these occasions, Appellant would usually sleep on the couch in the living room.

Complainant testified that she and Appellant started watching a television show together when she was around 12 years old. Complainant said the show would come on "really late" on Saturday nights; she and Appellant would watch the show in the living room, sometimes accompanied by her sister. On one occasion, Complainant said she and Appellant were watching the show when he "brush[ed] his hand against" hers. Complainant recalled that Appellant "grabbed [her] hands and said that they were really soft." Complainant testified that, during another occasion, Appellant was "laying on the couch and [] kind of like guided [Complainant] on top of him." According to Complainant, her interactions with

Appellant "progressed" to include "cuddling" and Appellant "caress[ing]" her arms and back.

Describing a particular incident, Complainant said she and Appellant were laying on the floor watching television when they turned to face each other and Appellant put his hands "[i]n [her] vaginal area over [her] pants." Complainant testified that Appellant's hand was "massaging" her and Appellant was breathing heavily with his eyes closed. Complainant said the incident lasted less than a minute and ended when Appellant "just stopped touching" her.

Complainant recalled another specific incident, during which her mother ("Mother") walked into the living room one night and found Appellant and Complainant sleeping on the couch with their legs entangled. Complainant said she woke up to Mother yelling. Complainant followed Mother into the bedroom and told Mother nothing had happened. Complainant testified that this incident occurred before Appellant touched her "vaginal area"; at another point in her testimony, Complainant said Appellant "touched [her] before" Mother found them on the couch.

Appellant moved to California when Complainant was 14 or 15 years old. Complainant said Appellant moved back to Houston approximately two years later; Complainant recalled that Mother was planning to host a dinner party to celebrate Appellant's return. Complainant told Mother what had happened between her and Appellant. Complainant said she did not go to the police at this time because she did not want to damage her family's relationship with the church.

Complainant reported the incident to the police in December 2013, when she was 18 years old. According to Complainant, she decided to go to the police when she learned Appellant was going to become a pastor.

Mother was the second witness to testify at trial. Mother said she and her children moved to Houston in 2005; at that time, Mother's husband was living in the church's rehabilitation home. Mother testified that her family was "pretty involved" in the church and met Appellant shortly before he became a youth leader. According to Mother, her family saw Appellant "quite often" and eventually "purchased an extra bed so that [Appellant] can stay at our house". Mother said Appellant would stay at their home "maybe about two times a week, skipping a few weeks here and there." Mother said she "[a]bsolutely" trusted Appellant and that he "was free to stay whenever he wanted." Mother testified that Appellant would sometimes sleep in his bed and other times sleep on the couch in the living room.

Mother also testified about the occasion where she found Appellant and Complainant "sleeping on the couch together". Mother said they were "inclined toward each other" and appeared to be "embracing"; Mother recalled thinking that Appellant and Complainant "had been involved in some kind of inappropriate sexual or intimate actions." Mother screamed and took Complainant into her bedroom. Appellant left the family's home.

Mother testified that, a couple of hours later, Appellant returned to the home and said the church's "main pastors wanted to talk" to Mother and her husband. Mother said Appellant talked at the meeting and explained that he and Complainant "just innocently fell asleep on the couch watching television." After the meeting, Mother said she "was convinced that nothing really happened, that it was just a misunderstanding." Mother said Appellant was still permitted to come over to their home.

Discussing Appellant's return to Houston after his brief stay in California, Mother said she had planned to throw a "nice dinner" for him. Mother told

Complainant about her dinner plans and Complainant told Mother she "hate[d]" Appellant because he "had actually molested her". According to Mother, Complainant said the incident occurred on the same night Mother found them on the couch. Mother said Complainant asked her not to go to the police. Mother testified that she informed the pastor's wife about what Complainant told her; Mother said the church did not take any action or make any changes.

Appellant was the last witness to testify at trial. Appellant said he would spend the night at Complainant's house "maybe a couple of times a month", "typically on weekends." Discussing the night that Mother found Appellant and Complainant on the couch, Appellant said he came over to the family's house around midnight on a Friday to hang out with Complainant's brother and spend the night. Appellant said he knocked on the door and Complainant answered; Complainant told Appellant that "everybody was asleep" so Appellant "went and laid down on the couch." According to Appellant, Complainant was sitting on another couch in the living room; Appellant said they talked for a few moments before he "dozed off".

The next thing Appellant recalled was "being woken up by a screaming woman". Appellant realized Complainant was laying next to him; he testified that he did not invite Complainant on the couch and did not recall her climbing on the couch. Appellant said he left the home and went to talk to the church's pastor "because [he] didn't know what to do." Afterwards, Appellant said he talked to Mother and her husband and said:

> I was sorry that I was there and that I allowed [Complainant] to get to that — you know what I'm saying, that I shouldn't have even been there, I should have just not stayed the night and I hate that that situation happened. And I told them, like, nothing else happened. You know, nothing happened.

7

Appellant said he did not stay at Complainant's house again "[b]ecause of what happened. Like, I didn't want that to happen again, you know."

Appellant married in April 2014 and continued to be involved in the church. Appellant testified that, before and after his marriage, Complainant would continue to attend youth services of which he was in charge. Appellant said he first heard about Complainant's allegations when he was contacted by police. Appellant denied touching Complainant in her "vaginal area". Appellant opined that Complainant's account of what occurred between them was "all a lie" and Complainant was jealous he was engaged.

## III. Application

Considered in the light most favorable to the jury's verdict, this evidence would permit a rational juror to find the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Ramsey*, 473 S.W.3d at 808.

As discussed above, Complainant testified that Appellant was a regular overnight visitor at their home and, on one occasion, put his hands "[i]n [her] vaginal area over [her] pants." Complainant's testimony alone constitutes legally sufficient evidence that Appellant engaged in sexual contact with a child under the age of 17 years old. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1); Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1). And as an element of the offense, Appellant's intent to arouse or gratify the sexual desire of any person can be inferred from Complainant's testimony regarding Appellant's actions during the occurrence (*i.e.*, that Appellant was "massaging" her while breathing heavily with his eyes closed) as well as from Appellant's pattern of behavior with Complainant.

Moreover, Complainant's account finds support in other evidence detailing Appellant's and Complainant's relationship and interactions. Complainant

testified that incidents with Appellant progressed from him grabbing her hands to them "cuddling" and "caress[ing]". Complainant and Mother testified about the incident when Mother found Appellant and Complainant sleeping on the couch together; Mother said Appellant and Complainant looked like they "had been involved in some kind of inappropriate sexual or intimate actions." Mother also testified that Complainant told her about Appellant's inappropriate touching shortly before Appellant moved back to Houston from California.

In his sufficiency challenge, Appellant argues the jury's verdict is "founded on irrational testimony . . . where the only version of the event given by the [C]omplainant was inherently irreconcilable." Specifically, Appellant contends (1) Complainant testified "she was not molested" during the incident where Mother found her on the couch with Complainant, and (2) after that occasion, Appellant was never physically alone with Complainant.

Indeed, Complainant testified that the inappropriate touching did not occur when Mother found her and Appellant on the couch but instead happened on another occasion. Complainant's testimony regarding the timeline of when the inappropriate touching occurred was not clear: at one point, she said the touching occurred before Mother found her and Appellant on the couch, but later said it occurred after Mother found them. Mother testified that Complainant told her the inappropriate touching occurred on the night she found Complainant and Appellant on the couch; Mother also said she did not recall Appellant spending the night at their home after the couch incident. And according to Appellant, he did not spend the night at Complainant's home after the couch incident. However, although these versions of events differ, it was within the jury's province to resolve these conflicts in the evidence. *See Isassi*, 330 S.W.3d at 638. We presume the jury resolved these conflicts in favor of the verdict and decline to second-guess those

determinations on appeal.

Appellant also asserts Complainant "made the outcry" to Mother "admittedly as an expression of resentment that Appellant had found a woman he was in love with and planned to marry." But this does not accurately reflect Complainant's testimony on this point. When asked if she was "upset with the fact that [Appellant] was marrying somebody besides you", Complainant said "No." Complainant said she was insecure and upset because, after what Appellant "did to [her]", "it wasn't fair that he was going to be able to do what he wanted to do and [Complainant] couldn't." Complainant never testified that her allegations were merely "an expression of resentment".

We overrule Appellant's arguments on appeal and conclude the jury's verdict is supported by legally sufficient evidence.

## CONCLUSION

We affirm the trial court's judgment.


/s/     Meagan Hassan
        Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Hassan.

Do Not Publish — Tex. R. App. 47.2(b).

10