

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00683-CR

Francisco J. **SANTOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2019CRB001398D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: May 8, 2024

AFFIRMED

A jury convicted appellant Francisco Javier Santos, Jr. on one count of murder and one count of burglary of a habitation with intent to commit a felony aggravated assault in connection with the death of Ramiro Jose Gonzalez. *See* TEX. PEN. CODE ANN. §§ 19.02(b), 30.02(d). The trial court assessed punishment at concurrent terms of imprisonment of forty and twenty years respectively. In one issue, Santos complains that the trial court abused its discretion by overruling his motion for a mistrial. We affirm.

At trial, Martin Gonzalez, Ramiro's bother, testified that on May 3, 2019, he and Ramiro were inside Ramiro's ranch house. Martin recalled that Santos "broke the [door] frame," entered the house with a firearm, and aimed it at him. Santos then left the house. Martin grabbed a rifle and followed Santos outside the house.

Santos, in a statement to law enforcement,[1] described visiting Martin's ranch house with his pregnant wife and being chased away from it. Specifically, Santos stated that upon arriving at the house, one of the occupants "start[ed] throwing rounds." He returned to his wife's vehicle, and she drove the couple away from the house. However, Martin "t[ook] off in the truck after me taking rounds." As the chase ensued, Santos thought that his wife had been shot. Then, Martin "rammed" his pickup into the back of Santos's vehicle. Santos thought, "I'm not going to stand there with my arms crossed." He asked his wife to "stop the truck and give me your rifle."

Meanwhile, according to Martin's testimony, Martin waited for Ramiro to return to the house. When Ramiro did not return, Martin drove around his property looking for Ramiro. Eventually, Martin found Ramiro's body.

Texas Highway Patrol Officer Christopher Lyons participated in the investigation of Ramiro's death. Specifically, Officer Lyons testified:

> STATE:      Now, Trooper Lyons, based on your training, experience, and knowledge, at this point did you find that [Santos] was being deceptive?
>
> OFC. LYONS:  Yes, ma'am.
>
> SANTOS:     Objection, Your Honor. May we approach?
>
> COURT:      Yes.
>
> (At the bench)

---

[1] The trial court admitted a transcript of a law enforcement interrogation of Santos conducted shortly after the incident.

SANTOS:     Your Honor, that's clearly an improper statement given by the trooper as to my client's state of mind, and that's an improper question that is only for the jury to decide. I'm asking for a mistrial based on the trooper's response in this case, and I don't think the jury can disregard what they heard him say, that my — that my client was being deceptive.

STATE:      Your Honor, I asked him based on his knowledge, training, and experience whether he was — he believed he was being deceptive.

COURT:      What are you trying to get at? Because you're on a fine line with that. It's not a mistrial type, but you're on a fine line.

STATE:      Well, your Honor, I can rephrase it.

COURT:      But what is it you're asking here, so we don't get —

STATE:      Because I'm asking — I'm asking what his state of mind was as he's perceiving into this encounter.

COURT:      Well, you're going — I'm anticipating two, three steps ahead of where I think you're going. I want to know from you, what it is you're trying to get, so we can maybe get to that point. Instead of —

(Simultaneous crosstalk)

. . .

COURT:      The objection that he's making is because — it's not a mistrial. I'm going to deny a mistrial.

SANTOS:     Thank you.

COURT:      But you can't ask a witness, "Do you believe another witness, or do you believe somebody else?" Because that is within the purview of the jury. Had it been the testimony of someone else, and they made that objection, it is a call to whether I need to declare a mistrial. And it is because the prosecutor is asking the question.

STATE:      Okay.

COURT:      It may not be able to be tried again. That's what I'm telling you.

STATE:      Okay.

COURT:      It's a very fine line.

STATE:      Yes, sir.

COURT:      But you need to ask about — did you find — just get to those questions. Whether — did you believe him or not.

STATE:      Did you believe him.

COURT:      Instead of asking —

STATE:      I'm sorry, I misinterpreted. You need to get to the point of what you're trying to get to. The second or third question that you asked.

SANTOS:     And, Judge, may I ask the court for a limiting instruction for the jury to disregard the [t]rooper's statement.

STATE:      Yeah. That was my next question.

SANTOS:     And whatever other limiting instructions the Court wishes.

COURT:      Okay.

COURT:      The jury will be instructed to disregard the last response — the last question and response given by the witness.

During the State's closing argument, it stated, "Now, I'm going to tell you a little story. Not one [Santos] told you. Not one like that. I'm going to tell you the truth. The truth — a true —" before Santos interrupted with an objection, and the trial court instructed the State to "[l]imit it to closing argument." Santos sought neither a limiting instruction nor a mistrial during this exchange.

In Santos's sole issue, he contends that "the trial court improperly denied [his] motion for mistrial when the State flagrantly elicited improper expert opinion of the truthfulness of [his] explanation to law enforcement." Santos notes that the trial court's discretion in deciding his motion for mistrial is governed by three factors: (1) the severity of the misconduct (i.e., the prejudicial effect), (2) curative measures by the court, and (3) the certainty of conviction absent the misconduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Santos points to the trial court's comment — and lack of ruling — in response to the State's closing argument as

- 4 -

evidence that the State's misconduct (factor 1) was so severe that it was beyond any curative instruction (factor 2). Santos also argues that the trial court "engaged in [a] paternalistic approach with the State,"[2] and while such conduct "may not rise to an independent complaint of impartiality," it nevertheless constitutes a "troubling" and inappropriate "consideration for deciding whether to grant a mistrial."

The State responds by arguing that Santos failed to preserve his sole issue by "immediately [requesting] a mistrial rather than seeking a less drastic remedy." It references *Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012) (citing *Ocon v. State*, 284 S.W.3d 880, 886–87 (Tex. Crim. App. 2009)), a case wherein "[t]he appellant did not request a curative instruction before moving for a mistrial," and the Texas Court of Criminal Appeals recognized that such a decision

---

[2] Santos's sole example is an exchange during the State's examination of Texas Ranger Jimmy Chatfield, which occurred after the trial court denied Santos's motion for new trial. Santos asserts "the trial judge guided the State to offer inadmissible evidence for a purpose the trial judge believed to be permissible." The exchange is as follows:

| | |
|---|---|
| STATE: | Did Martin Gonzalez indicate what Francisco Santos was wearing? |
| RANGER CHATFIELD: | He did. He stated that he was wearing a camouflage shirt. He was unsure about the pants; possibly brown. |
| STATE: | Did you learn of any possible discord between the Gonzalez brothers and Francisco Santos? |
| RANGER CHATFIELD: | Yes, ma'am, there was — |
| SANTOS: | Your Honor, I'm going to object to the testimony being hearsay. |
| STATE: | Judge, it goes to motive. |
| COURT: | It goes to motive? Any other response? |
| SANTOS: | No, sir. |
| STATE: | And it's not to prove the truth of the matter asserted. |
| COURT: | It goes to the mind — |
| STATE: | To the state of mind, yes, Judge. |
| COURT: | Overruled on that. |

was "a choice that forfeited appellate relief for an error that could have been cured by such an instruction."

In *Ocon*, 284 S.W.3d at 886–87, the Texas Court of Criminal Appeals held that "[a]n appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review *of that class of events* that could have been cured by the lesser remedy." *Id.* (emphasis added). In other words, if the defendant failed to request an instruction to disregard prior to moving for a mistrial and the error could have been cured by such instruction, the defendant has forfeited appellate review. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing *Young v. State*, 137 S.W.3d 65, 69–70 (Tex. Crim. App. 2004)).

Neither Santos nor the State references an appellate opinion addressing whether an investigating law enforcement officer's testimony that he believed the defendant was "being deceptive" falls within "that class of events that could have been cured by the lesser remedy." *Ocon*, 284 S.W.3d at 886–87. Our research has found at least two appellate opinions involving direct statements of personal belief as to the credibility of a witness by a prosecutor. *See McDonald v. State*, 148 S.W.3d 598, 603 (Tex. App.—Houston [14th Dist.] 2004) (holding that a mistrial was not warranted by prosecutor's argument that he thought the testifying victim was "very believable"), *aff'd on other grounds*, 179 S.W.3d 571 (Tex. Crim. App. 2005); *Nauert v. State*, 838 S.W.2d 328, 329–30 (Tex. App.—Austin 1992, pet. ref'd) (per curiam) (holding that an instruction to disregard cured harm from prosecutor's suggestion, during opening argument, that the jury should believe the complainant because the prosecutors and investigators believed her).

Officer Lyons's answer is akin to the prosecutor's statements of personal belief as to the credibility of the complainants in *McDonald*, 148 S.W.3d at 603, *aff'd on other grounds*, 179 S.W.3d 571 (Tex. Crim. App. 2005), and *Nauert*, 838 S.W.2d at 329–30, in that both fall within "that class of events that could have been cured by the lesser remedy." *Ocon*, 284 S.W.3d at 886–

87. As noted above, under *Archie*, 221 S.W.3d at 699, unless Officer Lyons's answer was incurable by an instruction to disregard, Santos has waived his right to appellate review of his sole issue. In this case, Santos requested a limiting instruction only *after* the trial court denied his motion for a mistrial. The waiver rule under *Archie*, 221 S.W.3d at 699, applies. *See Ocon*, 284 S.W.3d at 886–87 ("An appellant who moves for a mistrial without *first* requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy.") (emphasis added).

Lastly, we note that Santos's argument relating to the trial court's "paternalistic approach" does not reference any appellate opinion analyzing asserted error made after a trial court's denial of a motion for mistrial. Moreover, Santos does not explain how he can overcome the waiver rule articulated in *Archie*, 221 S.W.3d at 699, and reaffirmed in *Ocon*, 284 S.W.3d at 886–87, regarding conduct he did not object to at trial and for which he did not request a curative instruction or seek a mistrial.

For these reasons, we overrule Santos's sole issue and affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH